[*205]   DOLE, Sheriff of Rensselaer, *against* MOULTON and others.

A bond was given to the sheriff by a prisoner in execution, to remain a faithful prisoner within the liberties of the prison. The prisoner, afterwards, accidentally, walked sixteen feet over the prescribed limits, which in many parts were bounded by an imaginary line, and returned immediately, without the knowledge of the sheriff, and before any action brought: it was held, that no action could be maintained on the bond, which was given for the indemnity only of the sheriff, and this being a mere voluntary escape, and a voluntary return, before action brought, the sheriff could not be damnified.

In bonds for the performance of covenants and for indemnity the penalty is not recoverable. Courts of law are invested with an equitable jurisdiction on the subject, and the true question in courts of law as well as in courts of equity, is now a question of damage. *Quantum damnificatus* is the true point in issue in all such cases. Per *Lansing*, Ch. J.

THIS was an action of debt, on a bond. The defendant craved *oyer* of the condition of the bond, which was, that if Moulton, then confined in the jail of the county of Rensselaer, in the custody of the plaintiff, as sheriff, on a *ca. sa.* at the suit of Elisha White, &c. should remain a true and faithful prisoner, within the liberties of the jail, &c. They then pleaded, 1. *Non est factum ;* 2. That the defendant did remain a true and faithful prisoner within the liberties, &c. 3. That " on the 10th July, 1799, at Troy, in the county of Rensselaer, the said Josiah Moulton was walking within the bounds, or limits prescribed by law, for the liberties of the jail, or prison, which limits were not defined by visible objects, but in many parts terminated by an imaginary line,

and being so walking within the said limits next or adjoining to the bounds of the said jail or prison, terminated by such imaginary line as aforesaid, he the said J. M. casually and accidentally, in walking as aforesaid, crossed and went without the said prescribed limits of the said prison, the distance of sixteen feet, and no more, and thereupon, and immediately thereafter, and without any fresh or diligent pursuit, or retaking of him the said J. M. by the said J. Dole, he the said J. M. voluntarily, and of his own accord, instantly returned within the liberties of the said jail or prison, and within the custody of the said sheriff, on the said *ca. sa.* to wit, &c. and continually, after such return, until the day of the exhibition of the bill of the said James Dole, the said J. M. hath been and continued, and still doth remain and continue, within the liberties of the said jail or prison, for the cause *aforesaid, according to the tenor and effect of   [*206] the said writing obligatory ; and, the said defendants aver, that the said return of the said J. Moulton into the liberties of the said jail or prison, in manner aforesaid, was prior to any suit or action, or pretence of suit or action, sued, prosecuted or commenced against the said James, for or by reason of any escape, made or pretended to be made, by the said J. M. or for or by reason of his going out of the said liberties, in manner aforesaid, and this they are ready to verify," &c.

On the first and second pleas issue was joined by the plaintiff. To the third plea there was a demurrer and joinder.

*Bird* and *Van Vechten,* for the plaintiff.

*Woodworth* and *Spencer,* contra.

LANSING, Ch. J. delivered the opinion of the court, to the following effect. Two objections have been taken by the defendants to the validity of the bond ; 1. That the penalty is more than double the amount of the bond ; 2. That the condition is not conformable to the terms of the act, because it does not contain the words, "that the prisoner shall not, at any time or in any wise, escape or go without the limits of the liberties."

Dole v. Moulton and others.

As to the first objection, it will be seen that the penalty does not exceed double the amount of the execution, including the sheriff's fees for *poundage*. The act directs the bond to be taken in a penalty of double the amount of the sum for which the prisoner is confined. It does not refer to the precise sum in the execution. The poundage is due from the prisoner, as a part of the debt, and must be paid, before he is entitled to a discharge. This appears to be the rule in England, (2 Term Rep. 132,) and is sanctioned by the usage here. But it does not lie in the mouth of the defen-
[\*207] dants to \*make this objection. It is not pretended that a bond in a higher sum has been extorted from them. They must, therefore, be considered as having acquiesced in it, and ought not now to be allowed to avoid it, on that ground.

The second objection is equally untenable. The condition of the bond is, in effect, the same as if it contained all the words of the act; and if it was not, the bond ought not to be invalidated, because it omits to bind the defendants to the full extent which the plaintiff had a right to demand. It is well enough, if it is within the act; and if less extensive, it is a favor to the defendants, of which they have no reason to complain.

Having dismissed these objections, we come to the principal question, the sufficiency of the third plea. The plea admits the liberties to have been prescribed by law, and although they are, in many parts, terminated by imaginary lines, we must conclude that they were designated as to the county court appeared proper, and were sufficient to regulate the sheriff's conduct. The bond, then, being offered to the sheriff, it was his duty, if the sureties were sufficient, to have permitted the defendant, Moulton, to go at large within the liberties. By the supplementary act of the 30th March, 1799, it is declared, that the sheriff may permit prisoners to go at large within the liberties, without any security taken; and when the security is procured and offered, it may be considered as obligatory on the sheriff, to give the prisoner who offers it, the use of the liberties of the jail. He has no other

Dole v. Moulton and others.

than a reasonable discretion to exercise, in regard to the competency of the security, and the fitness of the bond.

In all cases, therefore, where the security is offered, the four walls of the prison, according to the ancient law, are enlarged to the extent of the limits assigned, by the statute ; and the law concerning escapes must, without doubt, apply to the limits, in the same manner as *it formerly [208] applied to the four walls of the prison. (2 Term Rep. 131.) So that the limits are to be considered, in such case, as the prison.

The bond, in this case, is for the *indemnity* of the sheriff only. Notwithstanding its form, or the terms in which it is expressed, this would result from the construction of the act of the 5th April, 1798, (11 sess. c. 91,) without the declaratory act of the 30th March, 1799, (11 sess. c. 65,) which is retrospective, and affects pre-existing, as well as subsequent bonds. Viewing it as a bond of indemnity, merely, it must appear, that the sheriff has been *damnified*, in order to maintain this action.

An escape without the knowledge of the sheriff, and a voluntary return without his knowledge, before suit brought, is tantamount to a retaking on a fresh pursuit. (Com. Rep. 554. 2 Term Rep. 129.)

Here the prisoner immediately returned within the limits. His going beyond them cannot be considered as a voluntary escape on the part of the sheriff. He was authorized by law to take the bond, and indulge the prisoner with the privilege of the liberties. It was a legal act which cannot be imputed to him as a fault, nor can it justify the inference, that he consented to the escape. It is, therefore, to be considered as a voluntary escape only, and the return of the prisoner before action brought, saves the condition of the bond, and is a competent defence on the part of the sheriff.

Here, then, is a case, in which the sheriff cannot sustain any damage from the escape, and the question results, whether he is entitled to recover on this bond. As the sheriff has not, and cannot be damnified by the alleged escape, it would be absurd to say, that the plea was not valid, when it

discloses matter sufficient to show that the plaintiff sustained no injury.

   In bonds for the performance of covenants and for indemnity, the penalty is not recoverable.  Courts of law [*209] *are invested with an equitable jurisdiction on the subject; and the true question in courts of law, as well as in courts of equity, is now a question of damage. *Quantum damnificatus*, is the true point in issue, in all such cases ; and *non damnificatus*, must be a good plea to all indemnifying bonds.  The plea in the present case is substantially such a plea.

   We are, therefore, of opinion, that the defendant is entitled to judgment.

   BENSON, J. and RADCLIFF, J. though they concurred in the judgment of the court, declined giving any opinion, whether the sheriff was bound to grant the privilege of the liberties of the prison, on tender of a bond, without sufficient sureties, as the decision of that point was not necessary in the determination of the question, as to the validity of the plea.

   LEWIS, J. was absent.

                Judgment for the defendant.(*a*)(*b*)

---

(*a*) See note (*a*) to *Lansing* v. *Fleet, supra*, p. 4.

(*b*) [Old note.]  See *Tillman* v. *Lansing*, 4 Johns. R. 2d ed. 45, and references. *Bissel* v. *Kip*, 5 Johns. R. 2d ed. 89, and references. *Stone* v. *Woods*, 5 Johns. R. 2d ed. 182, and references.  *Peters and Gedney* v. *Henry*, 6 Johns. R. 2d ed. 121, and references.