## Nelson K. Hopkins, Respondent, *v.* Mary A. Ensign et al., Appellants.

An agreement between parties interested in a foreclosure sale, that all but one shall refrain from bidding, and permitting that one to become the purchaser, is not necessarily, and under all circumstances, void as against public policy. If the primary purpose be, not to suppress competition, but to protect the rights of the parties, and there be no fraudulent purpose to injure or defraud others interested in the result of the sale, the agreement may be upheld.

The question is one of fact to be determined by the trial court upon the evidence.

In an action to foreclose a mortgage in which the defense was that the mortgage was obtained by duress and that it was not supported by a valid and legal consideration, it appeared that W., the mortgagee, had rendered a large amount of professional services for H., the surviving partner of the firm of H. & E., for which no compensation could be compelled on account of H.'s insolvency. A mortgage, executed by E., was about being foreclosed; W. proposed to bid to secure his claim; E.'s wife desired to obtain title to the property for the amount due on the mortgage, and the only creditor of her husband, interested in the foreclosure, was willing that she should do so. She thereupon agreed that if W. would refrain from bidding on the sale, and she should become the purchaser for the amount necessary to satisfy the judgment, she would execute to him her bond and a mortgage on the premises for the amount of his claim. The conditions having been complied with, Mrs. E. executed the bond and mortgage as agreed, which were those in suit. The referee who tried the case found as facts that the papers were executed intelligently, without duress and with full knowledge, by the mortgagor, of all her rights. *Held*, that the mortgage was for a full and valuable consideration, and that plaintiff was entitled to the usual judgment of foreclosure and sale; also, *held*, that the owner of the equity of redemption could not attack the agreement, in this action; that, if injured, it was by a sale of the land for less than its value, and her remedy was an application to set aside the sale.

(Argued June 17, 1890; decided October 7, 1890.)

Appeal from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made October 21, 1887, which affirmed a judgment in favor of plaintiff entered upon the report of a referee.

This action was to foreclose a mortgage upon real estate in the city of Buffalo, and made by the defendant Mary A. Ensign to Truman C. White, to secure the payment of $2,500 and interest, and by said White assigned to the plaintiff.

The material facts were as follows: Charles Ensign died insolvent, seized of the property in question, and by his will devised the same to his wife, the defendant Mary A. Ensign, for life. The premises were of the value of $35,000 and upwards, and, at the death of Charles Ensign, were encumbered by a mortgage held by one Potter, which was thereafter foreclosed and the premises decreed to be sold. The amount due upon said mortgage, at the date of the said decree, was $16,225. George W. Holt was the sole executor of the will of said Charles Ensign, and the surviving partner of the firm composed of himself and said Ensign, and one Cornelia Hamilton, prior to the commencement of the foreclosure action had obtained a judgment against said Holt as surviving partner, for $600,000, and had commenced an action to subject said premises to the lien of said judgment. The plaintiff and Truman C. White were partners in business as attorneys at law, and, as such, were the attorneys for Potter in the foreclosure suit above mentioned. Mr. White had also been engaged on behalf of said Holt in numerous business and professional transactions growing out of the affairs of said firm of Holt & Ensign in which he had rendered a large amount of professional services, and for which he had received no compensation, and for which compensation could not be compelled from said Holt, on account of his insolvency. The parties interested in the premises at the time of the sale under the judgment in the Potter foreclosure action were Mr. Potter, the plaintiff in that action, Cornelia Hamilton, the holder of the judgment against Holt as surviving partner, Mary A. Ensign, as the holder of a life estate therein and the defendant May Ensign, as heir at law of said Charles Ensign. Mary A. Ensign desired to become the purchaser of said property at the sale under the Potter foreclosure for an amount sufficient to satisfy that judgment, and Mrs. Hamilton had consented, so far as

she was concerned, to permit her to buy the property at the sale for the amount aforesaid, and to carry out that purpose Mrs. Ensign had negotiated a loan of $18,000 from a savings bank, and Mr. C. A. Sweet, a friend, had agreed to advance the amount necessary to be paid on the day of sale, and reimburse himself from said loan when made. Mr. White also intended to attend said sale and bid, not merely on account of his client, Mr. Potter, the amount necessary to satisfy his judgment, but also on behalf of another client, one Pratt, a much larger amount, if necessary, in order to obtain said property. This purpose coming to the knowledge of Mrs. Ensign, it was, after negotiations, agreed by her that if the said White and Pratt would abstain from bidding at such sale, and if thereby the premises should be obtained by Mrs. Ensign for the amount necessary to satisfy the Potter judgment she would execute and deliver to said White in consideration thereof the bond and mortgage set forth in the complaint. Neither Pratt nor White bid at such sale, and Mrs. Ensign thereupon became the purchaser of the premises for the amount due in the foreclosure action, and thereafter executed and delivered to said White the bond and mortgage in question.

The referee found as a fact that the same were executed by Mrs. Ensign intelligently, without duress, and with full knowledge of all her rights, and for a good and valuable consideration, and as a conclusion of law that the plaintiff, as assignee of said bond and mortgage, was entitled to the usual judgment of foreclosure and sale.

Further facts are stated in the opinion.

*Adelbert Moot* for appellants. White's acts in relation to the transaction of exacting the bond and mortgage in suit from the mortgagor was oppressive, unjust and wholly without a conscientious regard to his duties as an attorney in the premises. (*O'Donnel* v. *Lindsay*, 7 J. & S. 523 ; *King* v. *Platt*, 37 N. Y. 155, 160; *Hall* v. *Hallett*, 1 Cox, 134 ; *Howell* v. *Baker*, 4 Johns. Ch. 118 ; *In re James*, 8 Ves. 352 ; *Owen*

v. *Foulkes*, 6 id. 634; *Case* v. *Carroll*, 35 N. Y. 388; *Hoyt* v. *Martense*, 16 id. 233.) If White was incapacitated from purchasing on his own account, he could not purchase in any case or under any circumstances by or as the agent of a third person. (*Ex parte Bennett*, 10 Ves. 384; *Cowell* v. *Carroll*, 75 N. Y. 99, 100; *Burling* v. *King*, 2 T. & C. 546; *Cadwell* v. *Colgate*, 7 Barb. 253, 257.) The rule that transactions between attorney and client, by which the former is benefited, will be set aside upon an action brought for the purpose, unless clearly shown by the attorney to have been either just or fair, or purely voluntary on the part of his client, applies to every relation which presupposes an ascendant or controlling influence by one party over another. (*Mason* v. *Ring*, 2 Abb. [N. S.] 327; *Evans* v. *Nellis*, 5 Den. 643; *Sears* v. *Shaeffer*, 6 N. Y. 271, 274; *Russell* v. *Burton*, 66 Barb. 539; *Lyon* v. *Mitchell*, 36 N. Y. 235; 66 Barb. 543.) Plaintiff cannot claim that he would be in any manner misled or injured if the complaint is ordered amended under section 723 of the Code of Civil Procedure, for the reason that he made proof of the illegality of the alleged consideration of the mortgage himself, and seeks to recover thereon. (*Risely* v. *Wightman*, 13 Hun, 164; *Bank of Havana* v. *Magee*, 20 N. Y. 359; *Harris* v. *Tumbridge*, 83 id. 92; 8 Abb. [N. C.] 291.) If we should assume for a moment that these parties stood upon an equality and that this was a simple agreement between them that one should abstain from bidding at a judicial sale, the agreement and every right sought to be secured thereunder is absolutely void, and being so, it could not be enforced either at law or equity. (*People* v. *Stephens*, 71 N. Y. 527, 545.) Plaintiff cannot successfully maintain the position that Mrs. Ensign was at blame in the transaction. (*Browning* v. *Morris*, 2 Camp. 790; 1 Story's Eq. Juris. 300; *Osborn* v. *Williams*, 18 Ves. 379; *Ford* v. *Hamilton*, 16 N. Y. 293.) The bond and mortgage were voidable by reason of the undue influence exercised over the mortgagor, and of duress. (*King* v. *Platt*, 37 N. Y. 160; 2 Story's Eq. Juris. 329; Chitty on Cont. 214; *Schoener* v. *Lissauer*, 36 Hun, 100; *Eadie* v. *Slimmon*, 26 N. Y. 9;

*Harris* v. *Carmody,* 131 Mass. 51; *McPherson* v. *Coxe,* 86 N. Y. 478, 479; *Haynes* v. *Rudd,* 30 Hun, 238•; *Fisher* v. *Bishop,* 21 Wkly. Dig. 575, 576; *Barry* v. *E. Ins. Co.,* 59 N. Y. 587; *Scholey* v. *Mumford,* 60 id. 498, 501; *Baldwin* v. *L., etc., Co.,* 74 id. 128–132; *Harmony* v. *Bingham,* 12 id. 100; *Decker* v. *Morton,* 1 Redf. 477; *Loomis* v. *Ruck,* 56 N. Y. 462; *Farr* v. *Pryer,* 2 Ch. Dec. 20; *Stenton* v. *Jerome,* 54 N. Y. 480; *Bates* v. *N. Y. Ins. Co.,* 3 Johns. Cas. 238.)

*Truman C. White* for respondent. The defense of an illegal consideration is not pleaded and cannot be urged on this appeal. (Code Civ. Pro. § 500; *McKryping* v. *Bull,* 16 N. Y. 297; *Dingledam* v. *T. A., etc., R. R. Co.,* 9 Bosw. 79; *May* v. *Burras,* 13 Abb. [N. C.] 384; *O'Toole* v. *Garom,* 1 Hun, 92; *Honegger* v. *Wettstein,* 13 Abb. [N. C.] 393; 94 N. Y. 252.) The purpose then of giving the mortgage, so far as Mr. Osgoodby was concerned, and so far as his counsel was acted upon, was to perpetrate a fraud upon the mortgagee through whose concessions his client was enabled to secure for herself at least $20,000. The arrangement was solely for her benefit and advantage, and greatly to the disadvantage of those who yielded to her the privilege she sought. (Greenhood on Pub. Pol. 161, 162; *Bronner* v. *Appleby,* 1 Sandf. 158; *Moore* v. *Remington,* 34 Barb. 427; *Evans* v. *Dravo,* 24 Penn. St. 62; *Lyon* v. *Summers,* 7 Conn. 399; *Hartley* v. *McAnulty,* 4 Yates, 95; *Renhart* v. *Castator,* 5 Barn. 112; *Killinger* v. *Reidenhauer,* 6 S. & R. 535; *Hassam* v. *Barrett,* 115 Mass. 256.) No contract not to bid at the Potter foreclosure sale was made by Mr. White, yet if there had been it would not constitute a defense in this action even if the facts had been pleaded. (*Marsh* v. *Russell,* 66 N. Y. 294; *People* v. *Stephens,* 71 id. 546; *Ryan* v. *Dex,* 34 id. 307.) No question having been made by plea or proof as to the *bona fides* of the plaintiff in taking the assignment of the mortgage in suit, which states in terms that it was given for a full and lawful consideration, the

plaintiff is entitled to recover irrespective of equities between the mortgagor and mortgagee. The defendant is estopped from denying the validity of the mortgage. (*Moore* v. *M. N. Bank,* 55 N. Y. 41; *Weyh* v. *Boyeau,* 85 id. 394; *Moore* v. *Westcott,* 22 Wkly. Dig. 515; *Best* v. *Thiel,* 79 N. Y. 15; *Marie* v. *Garrison,* 83 id. 15; *Schenck* v. *O'Neil,* 23 Hun, 209; *Payne* v. *Burnham,* 62 N. Y. 69; *Gottlieb* v. *Grissler,* 81 id. 57; *Hubbard* v. *Briggs,* 31 id. 518; *Hoffler* v. *Westcott,* 15 Hun, 243; *Morris* v. *Wood,* 14 id. 196; *Johnson* v. *Parmalee,* Id. 398; 2 Pars. on Cont. [6th ed.] 789; Jones on Mort. § 616.)

Brown, J. The defense to this action was placed upon two grounds: (1) That the bond and mortgage in suit was obtained by duress. (2) That it was not supported by a valid and legal consideration.

The referee found that Mrs. Ensign executed the bond and mortgage "intelligently and without duress, with full knowledge of all her rights," and as there was ample evidence to support that conclusion, the exception to that finding need not be further referred to.

The lack of a valid consideration to support the contract is said to result from the agreement on the part of the mortgagee not to bid at the foreclosure sale, under the Potter mortgage, and it is contended that that agreement was one to prevent or suppress competition at a public sale and was, therefore, void as against public policy.

There is authority for this contention in many of the older cases. (*Jones* v. *Caswell,* 3 Johns. Cas. 29; *Doolin* v. *Ward,* 6 Johns. 194; *Wilbur* v. *How,* 8 id. 444; *Thompson* v. *Davies,* 13 id. 112; 1 Story's Eq. Juris. § 293.)

But the rule applied in these cases has been very materially modified by the later decisions of the courts, and it is now settled that agreements between two or more persons that all but one shall refrain from bidding, and permitting that one to become the purchaser, are not necessarily and under all circumstances void. They may be entered into for a lawful purpose

and from honest motives, and in such cases will be upheld, and they will not vitiate the purchase or necessarily destroy the completed contracts to which they refer and in respect to which they are made. (*People* v. *Stephens*, 71 N. Y. 527–546; *Marsh* v. *Russell*, 66 id. 288; *Marie* v. *Garrison*, 83 id. 14–28; *Myers* v. *Dorman*, 34 Hun, 115; *Kearney* v. *Taylor*, 15 How. [U. S.] 494; *Wicker* v. *Hoppock*, 6 Wall. 94; *Phippen* v. *Stickney*, 3 Metc. 384; *Maffat* v. *Ijams*, 103 Penn. 266; *Garrett* v. *Moss*, 20 Ill. 549; *N Bk. of Metropolis* v. *Sprague*, 20 N. J. Eq. 159; *In re Carew*, 26 Beav. 187.)

It was said in *Phippen* v. *Stickney*: "When such an agreement is made for the purpose and with the view of preventing fair competition and by reason of want of bidders to depress the price of the article offered for sale below the fair market value, it will be illegal, and may be avoided as between the parties as a fraud upon the rights of the vendor. But, on the other hand, if the arrangement is entered into from no such fraudulent purpose, but for the mutual convenience of the parties and for a reasonable and honest purpose, such agreement will be valid and binding."

The rule thus stated was approved by this court in *Marsh* v. *Russell*.

In *Marie* v. *Garrison*, it was said that "the mere fact that an arrangement fairly entered into with honest motives for the preservation of existing rights and property may incidentally restrict competition at a public or judicial sale, does not, we think, render the arrangement illegal. The question of intent, at all events, is one for the jury upon the whole facts, as they shall appear at the trial."

And in *Wicker* v. *Hoppock*, Justice Swayne, speaking for the court, said: "The validity of such an arrangement depends upon the intention by which the parties are animated, and the object sought to be accomplished. If the object be fair — if there be no indirection — no purpose to prevent the competition of bidders, and such is not the necessary effect of the arrangement in a way contrary to public policy, the agreement is unobjectionable and will be sustained."

It would be impossible to distinguish, in their facts, many of the cases I have cited from the earlier decisions in Johnson's Reports, and so far as those early cases lay down the broad rule that every agreement of which the consideration is the forbearance of bidding at a public sale is *per se* void, they must be deemed to be overruled, and the extent to which the doctrine will now be carried seems to embrace only cases of fraudulent acts and combinations having for their object to suppress fair competition at the sale with the purpose of acquiring the property at less than its fair value.

The courts will now look to the intention of the parties, and if that be fair and honest, and the primary purpose be not to suppress competition but to protect their own rights, and there be no fraudulent purpose to injure or defraud others interested in the result of the sale, the agreement may be upheld. The question is one of fact to be determined by the trial court upon the evidence before it.

We have then in this case to inquire as to the character of the agreement which the appellant assails.

Mr. White, the mortgagee, had rendered a large amount of professional services to the surviving partner of the firm of Holt & Ensign, for which he had received no compensation, and for which compensation could not be compelled on account of Holt's insolvency. He might have secured the amount by bidding at the sale, and expected to reimburse himself in that way. He refrained from so doing on account of Mrs. Ensign's promise to pay the debt.

It was her desire to obtain title to the property for the amount due on the Potter mortgage, and the only creditor of her husband's estate, who appears to have been pecuniarily interested in that estate, was willing that she should do so. If all parties interested in the land had agreed that Mrs. Ensign might purchase the property freed from their claims upon paying to White the amount of his debt, no one could question the legality of such an agreement. Public policy would not forbid it, and no one being injured there would be no one who could complain.

Substantially that is what was done. Mrs. Hamilton's attorney made the arrangement with White by which he refrained from bidding in consideration of receiving security for his claim and he testified that it was important for Mrs. Hamilton's interests that some compromise should be made. Every one who had any substantial interest in the land, therefore, consented to the arrangement.

We are of the opinion that this agreement was not illegal, although it had the effect incidentally to prevent competition between White and Mrs. Ensign.

The referee has not found that the intention of the parties was to suppress competition, and the evidence shows that such was not their purpose. Mrs. Hamilton, who was the only person who would have benefited by such competition, consented to the arrangement.

If it is said that May Ensign, as the owner of the legal title to the land, was prejudiced or injured by the agreement, the answer is that if she was she cannot attack it in this action. If she has been injured it was by the sale of the land for less than its value, and it would be a gross perversion of a salutary principle of law to permit her, while acquiescing in the purchase of the land by her mother, to successfully assail the agreement by which her mother was enabled to acquire the title. If this defendant has cause for complaint, her remedy must be found in an application to set aside the sale and not in this action, which involves only the validity of the agreement and the parties to it.

There is no analogy between such an agreement as we are considering and one made to suppress bidding when a contract for the performance of a public work is to be awarded to the lowest bidder, or one where the intention is to have property sell for less than its real value, and thus deprive those interested therein of their just rights.

The first class are justly declared void on grounds of public policy, and the second because of their corrupt purpose and the fraudulent intent of the parties to them.

Here there was no corrupt intent and no illegality in White's

attempting to obtain payment or security for that which was equitably due to him, and there was no valid ground for the claim that his purpose was injurious to those interested in the sale.

The purpose of the agreement being lawful, and the motive of the parties honest, in the absence of a finding of unlawful intent, the case falls within the principle of the authorities cited.

We are also of the opinion that White's relinquishment of his right to bid at the sale was a sufficient consideration to support the mortgage. It is not essential that the consideration should import a gain or loss to either party. If the party in whose favor the contract was made foregoes some right or benefit it is sufficient.

In the cases cited from Johnson's Reports (*supra*), it was conceded by the learned judges who held that the agreements were illegal, that in other respects foregoing the right to bid was a valid and valuable consideration. (*Jones* v. *Caswell*, 3 Johns. Cas. 29; *Thompson* v. *Davies*, 13 Johns. 112; *Myers* v. *Dorman*, 34 Hun, 115.)

We have examined the other points made by the appellant, but there are none which require further discussion.

The judgment should be affirmed, with costs.

All concur, except BRADLEY, J., not sitting.

Judgment affirmed.